## Case No. 14,553.

### UNITED STATES v. BEARNS.

[See Case No. 14,551a.]

====

## Case No. 14,554.

### UNITED STATES v. BEATTIE.

[Gilp. 92.] [1]

District Court, E. D. Pennsylvania, June 10, 1829.

PRINCIPAL AND SURETY—PAYMENT—DISCHARGE—RELINQUISHMENT OF CLAIM—OFFICER.

1. Where one of two sureties in a joint and several bond given to the United States, is sued separately, a discharge of the other surety, by the president under the provisions of the act of 3d March, 1817 [3 Stat. 399], cannot be given in evidence under a plea of payment.

2. The act of 3d March, 1817, merely releases the person of a debtor, but does not affect the debt.

3. The letters and transactions between the officers of the government and a debtor to the United States, relative to his account, may be given in evidence under a plea of payment.

4. Where an officer, receiving a salary from the United States, is surety for a defaulter, the continuance of the payment of his salary is no relinquishment of the claim against him as surety.

5. The settlement and closing of an account of a public officer does not discharge his liability as a surety for another officer, though the default of the latter was previously known.

[Cited in U. S. v. Case, 49 Fed. 271.]

[1] [Reported by Henry D. Gilpin, Esq.]

On the 18th August, 1818, Thomas Burrowes, a purser in the navy, as principal, and Francis S. Beattie and Edward M'Gee as sureties, executed to the United States of America a joint and several bond for twenty-five thousand dollars. The condition was that "Thomas Burrowes should regularly account, when thereunto required, for all public moneys received by him, from time to time, and for all public property committed to his care, with such officers of the government as should be authorised to settle his account, and should pay over any sums found due on such settlement, and should faithfully discharge the trust." By an indorsement on the back of the bond, the secretary of the navy, acting in behalf of the United States, agreed "that the obligors were not to be held responsible for any loss of the said moneys or property, occasioned by capture, sinking, stranding, or any other unavoidable casualty; and, if the purser should be deprived of his books or vouchers by such circumstance, the obligors were to be exonerated, on producing satisfactory evidence of the facts, unless it was shown that the money or public property had been misapplied." In the year 1821, Thomas Burrowes died, and on the 5th October, 1822, the fourth auditor directed the purser at Philadelphia to retain the pay of the defendant, Francis S. Beattie, who was a surgeon's mate, to meet a delinquency in the accounts of the former. This was done accordingly; and the suspension continued until the 30th June, 1823, when the defendant received a letter from the secretary of the navy, informing him that his accounts were closed, and that he was thereafter regularly to receive his pay and rations as a surgeon's mate. By this settlement, a balance appeared to be due to the defendant of two hundred and sixty-six dollars and eighty-seven cents, which was retained by the treasury, to be applied as an offset to the amount for which he was responsible as the surety of Thomas Burrowes. On the 29th November, 1823, a final settlement was made at the treasury of the account of Thomas Burrowes, by which it appeared that, at the time of his death, there was a balance of public money due by him to the United States, amounting to one thousand two hundred and ninety-six dollars and twelve cents. To recover this, separate suits were instituted in the Eastern district of Pennsylvania, on the 19th January, 1824, against each of the sureties, Francis S. Beattie and Edward M'Gee. The summons in the former case was returned "Nil habet;" but judgment was recovered against the latter for the whole amount of the balance due from Thomas Burrowes. On this judgment, execution issued against M'Gee, who was arrested and imprisoned, but, on the 16th August, 1824, the marshal returned that he had been "discharged by order of the president." On the 7th March, 1825, the present suit was brought against

Francis S. Beattie, on the same bond, and to recover the whole of the balance due from Thomas Burrowes, as above stated. The defendant pleaded "nil debet and payment, with leave to give the special matter in evidence," and the United States joined issue.

On the 10th June, 1829, the case came on for trial before Judge HOPKINSON and a special jury. It was argued by District Attorney Dallas, for the United States, and Mr. Sykes and J. C. Biddle, for defendant.

The validity of the bond, and the correctness of the account of Thomas Burrowes, as settled at the treasury, being admitted by the defendant, and the set off, to the amount of two hundred and sixty-six dollars and eighty-seven cents, retained from his pay, being agreed to on the part of the United States, the only questions in the case arose upon the following evidence, offered by the defendant under his plea of payment, with leave: 1. The record of the proceedings against Edward M'Gee, a party to the bond on which this suit was brought, and of his arrest, imprisonment and discharge, by order of the president. 2. The letters of the fourth auditor and of the secretary of the navy; the first directing the pay of the defendant to be retained, on account of his liability, under the same bond; and the second, informing him that his account was closed, and his pay was to be resumed.

Mr. Dallas, U. S. Dist. Atty.

All this evidence is objectionable; both that which relates to the suit against the co-obligor Edward M'Gee, and that which relates to the closing of the defendant's own account in 1823.

(1) The record of the proceedings against Edward M'Gee is entirely irrelevant; there is no issue to which it can apply; the defendant is separately sued on his separate obligation, to which it does not even appear, by the record, that Edward M'Gee was a party; to this suit he does not plead any release of a co-obligor, or of himself, but merely the general issue and a payment by himself. Is this record evidence to establish either one or the other? It is not; and were it now before the jury, it would not prove any allegation which the defendant has made in his own pleas. But had it been pleaded, it would have been bad on demurrer; the suit against the co-obligor of course is no release, nor is such a discharge. The act of 6th June, 1798, authorised the secretary of the treasury, under certain circumstances, to order the discharge from custody of any person imprisoned upon execution for a debt due to the United States; and the act of 3d March, 1817, authorised the president to do the same, in any case which did not permit a discharge by the secretary, under the power given him in that act; but both laws expressly declare, that "the judgment shall remain good and sufficient in law, and may be satisfied out of any estate which may then or at any time afterwards

belong to the debtor." It was under this law that the president acted; of course what he did was subject to its limitations; to extend it beyond those limitations, would be to give to the acts of the executive officer, an interpretation which would defeat the very object of the law. The legislature intended merely to relieve the person of one obligor from custody; this intention was just, and legal; it cannot be construed into a meaning which would be in fact the reverse. 1 Story's Laws, 506 [1 Stat. 561]; 3 Story's Laws, 1652 [3 Stat. 399]; U. S. v. Stansbury, 1 Pet. [26 U. S.] 573; Hunt v. U. S. [Case No. 6,900]; U. S. v. Sturges [Id. 16,414].

(2) As to the evidence offered in regard to the stoppage of the defendant's pay, it is to be remarked that it can have no possible bearing on this case. The whole transaction occurred before this account of Thomas Burrowes was settled; all the money actually retained is credited; and what is said in regard to the closing of the account, relates to the pay of the defendant in his own right, not to his liability as a surety.

Mr. Sykes and J. C. Biddle, for defendant.

The error made by the plaintiffs, as to this evidence, arises from their endeavouring to separate into parts that which ought to be taken altogether. The defendant asserts that he owes nothing, that he has paid all the United States intended or expected he should pay, and consequently that he has satisfied their claim. This may not be proved by taking separately each particular fact offered in evidence, but it is the result of the whole of them taken together. The acts of the president, the auditor, and the secretary, are links in the chain; the whole series shows that the United States intended to release both the sureties. The plea is a general one, and the evidence offered by the defendant, taken altogether, will sustain it; it is not therefore to be rejected by considering it in parts. As soon as it was discovered that, at the time of his death, Thomas Burrowes was a defaulter, the United States looked to his sureties for indemnity. They first proceeded against the defendant, who, being a surgeon's mate in the navy, was entitled to compensation. According to the provisions of the second section of the act of 4th May, 1822 [3 Stat. 677], his pay was detained at the treasury, "to be applied," as is expressly stated by one of the letters now offered in evidence, "as an offset for the amount for which he was liable as surety of Burrowes." This continued till the 30th June, 1823, when, as is also expressly stated in another of the letters offered in evidence, "the defendant's account was closed by order of the secretary of the navy, and his pay restored as before;" which could not have been legally done had he still been "in arrears to the United States." They then proceeded against the other surety Edward M'Gee, and carried on the suit to final judgment and execution, which of

itself operated as a release of the co-obligor, the present defendant, and consequently is good evidence under the general plea of "Nil debet." The whole proceedings therefore taken together; first, the closing of the defendant's account and payment of his compensation when it ought to have been retained if he owed any thing; and secondly, the discharge of the other surety without the consent of the defendant; are proof that the officers of the United States considered the debt now claimed as satisfied. 7 [Bior. & D.'s] Laws. 50 [3 Stat. 677]; Rowley v. Stoddard, 7 Johns. 207; McLean v. Whiting, 8 Johns. 262.

Mr. Dallas, for the United States, in reply. The neglect of the public officers to retain the defendant's pay. after the 30th June, 1823, is no evidence either of payment or release. If they had neglected to retain it altogether, it would not have affected his liability. No point is better settled, than that the laches of a public officer does not affect the rights or claims of the government. So far as the defendant paid any money, he is entitled to credit; but nothing else can give it to him, whether the public officers were negligent, or whether they intended to release him. As to the discharge of Edward M'Gee, it has nothing to do with this case; the judgment against him remains in full force; therefore, the rights and liabilities of his co-obligor are in no respect affected, by the act which the evidence offered would establish. We admit the fact, but we deny altogether its bearing; it is not therefore proper evidence. U. S. v. Kirkpatrick, 9 Wheat. [22 U. S.] 720.

HOPKINSON, District Judge, rejected the evidence in regard to the discharge of Edward M'Gee, observing that the common law principle was clear, which precluded the introduction of evidence having no bearing upon the issue. This discharge could not serve the defendant under his plea of payment, even if it were proved, because the act of congress. by virtue of which the discharge was made. is a mere release of the person, and does not affect the debt. It was not so however in regard to the transactions of the treasury and navy departments, with the defendant; it was impossible to say that they did not contain proof, to a greater or less degree, of payments made by him on account of this liability. They ought therefore to be received in evidence, leaving for future consideration, the extent to which they operate.

The case went to the jury on this evidence, and HOPKINSON. District Judge, delivered the following charge:

The execution by the defendant of the bond on which this suit is brought is admitted; so of the condition and the breach. The account of Thomas Burrowes. the principal in the bond, was not settled until the 29th November, 1823. when it appeared there was due from him to the United States a balance of one thousand two hundred and ninety-six dollars and twelve cents. Burrowes died in the year 1821, and was known or supposed, some months after, to be a defaulter, although the amount was not ascertained; for on the 5th October, 1822, the fourth auditor wrote to the purser of the navy yard at Philadelphia. directing him to retain the pay of the defendant, Dr. Beattie, to meet the delinquency of Burrowes. On the 30th June, 1823. the secretary of the navy wrote to the defendant that his accounts were closed, and he was thereafter to receive his pay and rations as a surgeon's mate. On this settlement of the accounts of the defendant, there appeared to be due to him two hundred and sixty-six dollars and eighty-seven cents, which were retained to meet his responsibility for Burrowes, whose account was not yet settled; and, of course, the amount of that responsibility was not ascertained. It is now contended by the defendant, that these letters, from the fourth auditor and the secretary, sustain his plea of payment of this bond; and show that all claims upon him by the United States, not only on his own account but also as the surety of Burrowes, were entirely closed. This is an affirmative allegation, and it is incumbent upon the defendant to prove it to your satisfaction. He alleges that the account settled in June, 1823, was not merely of his own transactions with the government. but included the sum for which he was liable as the surety of Burrowes. If such be the fact, he could have shown it conclusively by producing the account. You would then have seen for yourselves of what items or particulars it is composed; you would have certainly known whether the sum of two hundred and sixty-six dollars and eighty-seven cents is simply the balance of the defendant's own account with the government. or whether the account goes beyond this. and charges him with the balance of Burrowes, now demanded of him, or any part of it. The account is not produced, nor is there any rational presumption to be drawn from these letters that such was the case: on the contrary. I do not see how it could be so. The account of defendant was settled some time antecedent to the 30th June, 1823, for on that day the secretary informed him of it. Now it was not until the December following that Burrowes' account was settled, and the amount of his debt to the United States known, to wit. one thousand two hundred and ninety-six dollars and twelve cents. It is evidently impossible that this amount could have formed a part of, or have been an item in, the account of Beattie, which was closed six months before; unless we are driven to the improbable presumption that the amount of Burrowes' balance was anticipated and assumed in the settlement of Beattie's account. If this was done the account itself would show it. The allegation. therefore. that the money due from Burrowes has been paid by the defendant in the settlement of his own account is

altogether unsupported. The letter of the secretary could have referred only to the private account of Beattie himself. If, on the final adjustment of the account of Burrowes, it had appeared that he was not indebted to the government at all; or not to the amount of two hundred and sixty-six dollars and eighty-seven cents, the sum retained from Beattie; would he not have had a just and legal claim for the return of this money? Could he have been told, "Your account is closed"? It is true the secretary informs him that he shall thereafter receive his pay, but does the relinquishment for the time of a harsh remedy, extinguish the claim? It was a liberal and equitable indulgence on the part of the secretary; it was perhaps but strictly right, that the earnings of the defendant should not be withheld from him, to meet an unascertained balance from a debtor for whom he was a surety, and where, whatever might have been the reasonable anticipation, it could not strictly be said that any forfeiture or breach of the bond had taken place. Whatever were the motives of the secretary in renewing the defendant's pay, as an officer in the service of the government, it can never have the effect of discharging him from the obligations of his bond.

We find further, that in March, 1825, the auditor of the treasury wrote to the defendant, informing him that the balance due to him would be applied as an offset to the amount for which he was indebted to the government as the surety of Burrowes. To this he made no answer or complaint, asserting as he now does, that his responsibility was paid and discharged on his account settled in June, 1823. From this it would seem, that neither the accounting officers of the treasury, nor Dr. Beattie himself, considered that this settlement embraced any thing but his private account, and had no relation to any claim upon him arising from the suretyship for Burrowes.

This is the whole testimony you have to act upon, for I consider the discharge of Edward M'Gee, the other surety, to have no relevancy to the case of the defendant. You will give him credit for the two hundred and sixty-six dollars and eighty-seven cents.

The jury found a verdict for the United States for thirteen hundred and sixty-eight dollars and eighty-seven cents.